```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 11 6 17
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

Barbara Peterson,

                Plaintiff,

          -against-

City of New York; Chief Larry W. Davis Asst. Dep. Warden
N.A. Valasquez #54; Captain G. Vaughn #441; Captain
Irshand Weston #1198; C.O. Dixon #1997; C.O. A. Holley
#14764; C.O. L. Emerson-Boykin #11402; C.O. L. Rue
#14596; C.O. Bell #13702; C.O. Lori Edmonds #1192; COBA
Legal Department (John Doe And Jane Doe); Workman's
Compensation Board; Deputy Inspector Raymond Caroli
NYPD 6th Precinct; Inspector Gin Yee NYPD 5th Precinct;
Rose Gill Hearn Commissioner of the Department of
Investigations; Captain William Valerio DOI (John Doe);
Investigator for Compensation Board Li MF (Jane Doe); NYC
District Attorney's Office (John Doe); Health and
Management Division (HMD); Doctor Mathur in HMD
Office; Doctor Kwasink in HMD Office; Dora B. Schirro DOC
Trials and Litigation; City of New York, and Jerome Davis,

                Defendants.
------------------------------------------------------------------X

10-CV-7283 (RWS)

**AMENDED COMPLAINT**

        Plaintiff, Barbara Peterson, for her complaint against Defendants, New York City

Dept. of Corrections; Chief Larry W. David; Asst. Dep. Warden N.A. Valasquez #54; Captain G.

Vaughn #441; Captain Irshand Weston #1198; C.O. Dixon #1997; C.O. A. Holley #14764; C.O.

L. Emerson-Boykin #11402; C.O. L. Rue #14596; C.O. Bell #13702; C.O. Lori Edmonds #1192;

COBA Legal Department (John Doe And Jane Doe); Workman's Compensation Board; Deputy

Inspector Raymond Caroli NYPD 6th Precinct; Inspector Gin Yee NYPD 5th Precinct; Rose Gill

Hearn Commissioner of the Department of Investigations; Captain William Valerio DOI (John

Doe); Investigator for Compensation Board Li MF (Jane Doe); NYC District Attorney's Office

(John Doe); Health and Management Division (HMD); Doctor Mathur in HMD Office; Doctor

Kwasink in HMD Office; Dora B. Schirro DOC Trials and Litigation; City of New York, and

Jerome Davis, states as follows:

INTRODUCTION

1.      This is an action for money damages, declaratory, and injunctive relief brought

pursuant to 42 U.S.C. §§ 1983, 1985 and 1988, the Fifth and Fourteenth Amendments to the United

States Constitution, against the City of New York and Lori Edmond in their individual and official

capacities.

2.      Plaintiff, Barbara Peterson (hereinafter, "Ms. Peterson" or "Plaintiff") was assaulted

by Lori Edmond ("Defendant Edmond") while on duty as a correction officer for the City of New

York.

3.      Plaintiff Barbara Peterson alleges that Defendant City of New York and Davis failed

to arrest and reprimand Defendant Edmond in furtherance of the policy and practice of covering up

workplace violence.

4.      Plaintiff alleges that these constitutional violations were committed as a result of the

policies and customs of the City of New York and the New York City Department of Corrections.

**JURISDICTION AND VENUE**

5.      This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 over

Plaintiff's cause of action arising under the Constitution of the United States and 42 U.S.C. § 1983

and pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.  This Court has

supplemental jurisdiction over plaintiff's causes of action arising under the New York State law

pursuant to 28 U.S.C. § 1367.

6.      Venue lies in the United States District Court for the Southern District of New York

because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in

New York City, New York.

**PARTIES**

7.      Ms. Peterson is an adult citizen and resident of the State of New York residing in

Richmond County at all relevant times.

8.      Plaintiff is a retired formerly correction officer employed by the City of New York as a regular full time employee at the time of the incident.

9.      Defendant Edmond was a corrections officer employed by the City of New York when the relevant events occurred.

10.     Defendant C.O. Dixon #1997 was a corrections officer employed by the City of New York when the relevant events occurred.

11.     Defendant C.O. A. Holley #14764 was a corrections officer employed by the City of New York when the relevant events occurred.

12.     Defendant C.O. L. Emerson-Boykin #11402 was a corrections officer employed by the City of New York when the relevant events occurred.

13.     Defendant C.O. Dixon #1997 was a corrections officer employed by the City of New York when the relevant events occurred.

14.     Defendant C.O. L. Rue #14596 was a corrections officer employed by the City of New York when the relevant events occurred and is now.

15.     Defendant C.O. Bell #13702 was a corrections officer employed by the City of New York when the relevant events occurred.

16.     Defendant Larry W. Davis, Chief of Department ("Defendant Chief Davis"), was employed by the City of New York when the relevant events occurred.

17.     Defendant Jerome Davis ("Defendant Warden Davis") was employed by the City of New York at the time of the occurrence.

18.     Defendant Warden Davis and Defendant Chief Davis failed to take reasonable steps to resolve the unlawful conduct alleged in this complaint.

19.     Defendant Chief Davis, Defendant Warden Davis and Defendant Edmond are

properly sued herein directly under 42 U.S.C. § 1983 for their own and their delegated deliberately indifferent unconstitutional decisions, policies, practice, habits, customs, usages, training and derelict supervision, ratification, acquiescence and intentional failures which were motivating forces in the complained of constitutional and statutory violations and resulting injuries.

20.     The Defendant City of New York is also properly sued under 42 U.S.C. § 1983 for the challenged delegated final decisions of Defendant Chief Davis and Defendant Warden Davis in their respective official capacities as the commanding officers and for those of any final delegated decision makers, with respect to the hereinafter challenged deliberately indifferent policies, decisions, widespread habits, customs, usages and practices.

## STATEMENT OF FACTS

21.     Beginning in August 30, 1990, Plaintiff began working as a corrections officer for the New York City Department of Corrections (the "DOC").

22.     On August 26, 2010, while on duty for the City of New York at Manhattan Detention Complex ("MDC"), Lori Edmond (the "Defendant Edmond") grew angry with Plaintiff over the placement of Plaintiff's bag.

23.     Defendant Edmond violently extracted Plaintiff's bag from where it was and threw it on the desk.

24.     Defendant Edmond began yelling at Ms. Peterson, they exchanged words with each other, but Ms. Peterson walked away sat down to avoid further confrontation.

25.     Defendant Edmond then walked up behind Plaintiff and struck her on the left side of her face three times.

26.     Plaintiff also spoke to nearby Correction Officer Lorrain Emerson-Boykin, ("Defendant Emerson-Boykin") who heard the nearby altercation.

27.     Other officers, including Corrections Officer Avra Holley ("Defendant Holley"), also

heard the argument.

28.     Plaintiff did not strike back and other officers on duty intervened.

29.     Defendant Warden Davis was the supervising warden of the division at that time recommended that the Plaintiff be suspended for five days for her role in the incident even though she was the one who had been assaulted.

30.     Ms. Peterson asked to go to the hospital for medical treatment to treat her face that was bruised from the blows delivered by Defendant Edmond.

31.     Ms. Peterson was treated at the MDC Clinic by Dr. Landis Barnes where she presented with facial contusions and visual signs of trauma.

32.     Defendant Warden Davis wrote an incident report dated April 26, 2010 and noted that Peterson reported that Defendant Edmond "struck her three times to the left side of the face."

33.     Defendant Warden Davis' initial report of the incident stated that Defendant Edmond did not report any physical touching by Ms. Peterson.

34.     Even though Defendant Edmond physically assaulted Plaintiff, Defendant Warden Davis wrote another report the same day contradicting the earlier report wherein he stated that Plaintiff also physically assaulted Defendant Edmond by claiming they were both involved in a physical altercation.

35.     Defendant Warden Davis further contradicted his first report in a subsequent Notice of Summary Suspension made the same day by stating that "Edmonds claims that Officer Peterson pushed up against her and put her fingers in her face" and that, "…based on the aforementioned information I am requesting suspension of Barbara Peterson…"

36.     Plaintiff attempted to lawfully file criminal charges against Defendant Edmond for the assault with the New York City Police Department at the fifth and sixth precincts, but the DOC intervened by making a call to the police department instructing them to refuse to file the

complaint.

37.    The next few years would mark a very tumultuous relationship between Ms.

Peterson, the DOC, other officers, OATH and the police department that sounded in retaliation and

a severe deprivation of her civil rights.

38.    The City of New York never recommended Defendant Edmond for any training or

counseling.

39.    Instead of treating Ms. Peterson like the victim that she was, the City of New York

through the DOC treated her like an assailant.

40.    Defendant City of New York even denied a reasonable accommodation and sent Ms.

Peterson to counseling after she complained about the DOC's mishandling of the assault on her by

Defendant Edmond in furtherance of its policy to silence officers who try to protect their right to be

free from workplace violence.

41.    Although there was medical documentation to support a charge of physical assault on

Plaintiff by Defendant Edmond, the DOC decided to turn a blind eye and suspend both parties to

avoid dealing with the physical assault on Plaintiff.

42.    The DOC failed to address the assault despite Plaintiff's repeated requests, suspended

Plaintiff for ten days and transferred Plaintiff to a less desirable work location after the incident in

retaliation for reporting this incident and trying to file criminal charges against Defendant Edmond.

43.    As a direct and proximate cause of the acts of the Defendants, Ms. Peterson suffered

injuries and damages in violation of her constitutional rights under the Fifth and Fourteenth

Amendments to the United Sates Constitution, including, but not limited to, loss of her physical

liberty; intentional, offensive contact with her body; and fear of imminent peril resulting from an

offer or attempt to injure her.

44.    The actions of Defendants violated clearly established and well settled federal

constitutional rights of Plaintiff.

45.    At all relevant times, Defendant Edmond, Defendant Chief Davis and Defendant Warden Davis were acting under color of law and under color of authority as a corrections officer, city employee, and agents or servants of the City of New York.

46.    All the above-described acts were done by the Defendants intentionally, knowingly, willfully, wantonly, maliciously and/or recklessly in disregard for Ms. Peterson's federally protected rights, and were done pursuant to the preexisting and ongoing deliberately indifferent official custom, practice, decision, policy, training, and supervision of the remaining Defendants Edmond and Davis, who were all acting under color of state law.

47.    Defendants encouraged, tolerated, ratified, and acquiesced to a dangerous environment of violence in the workplace by failing to conduct sufficient training or supervision with respect to the constitutional limitations on the use of physical violence in the workplace, failing to adequately punish unconstitutional uses of force, by tolerating the use of unconstitutional force; and failing to properly or neutrally investigate internal complaints of assault between officers and by tolerating, encouraging, and permitting collusive statements by involved officers in such situations.

48.    It is the longstanding widespread deliberately indifferent custom, habit, practice and/or policy of the Defendants to permit corrections officers to use excessive force against other officers when such use is unnecessary and unjustified, as well as to fail to supervise and to train deputies in the appropriate constitutional limits on the use of force, knowing that these members of law enforcement therefore pose a significant risk of injury to the public.

49.    With deliberate indifference to the rights of citizens to be free from malicious prosecution, the Defendant City of New York encouraged, tolerated, ratified, and acquiesced to the cover up efforts by corrections officers by failing to investigate internal complaints of officer misconduct, instead accepting officer accounts of events without question.

50.    It is the longstanding widespread custom, habit, practice and/or policy of the Defendant City of New York intentionally cover up misconduct between and among correction officers as long as any story is given by an offending officer, regardless of how incredible.

## FIRST CAUSE OF ACTION
### 42 USC § 1983

51.    By their conduct and under color of law all individual Defendants and Defendant City of New York, acting under color of law, deprived Plaintiff of her Fourteenth Amendment rights to have access to and seek redress through the proper channels.

52.    Defendants engaged in a cover up in order to conceal the failure to redress the wrongful and unlawful conduct taken against Plaintiff.

53.    Defendants' efforts to conceal the truth continued to the detriment of Plaintiff.

54.    As a direct and proximate result, Plaintiff suffered the injuries and damages described above.

55.    As a result, Plaintiff suffered emotional, physical and compensatory damages.

## SECOND CAUSE OF ACTION
### 42 USC § 1985(3)

56.    The individual Defendants conspired with each other for the purposed of preventing the authorities from enforcing Plaintiff's right to equal protection of the laws.

57.    Defendants engaged in a cover up in furtherance of the conspiracy to conceal the crimes and misconduct of Defendants Chief Davis, Warden Davis and Edmond.

58.    Among the actions taken in furtherance of the conspiracy were false statements made to the New York State Worker's Compensation Board about the attack on Plaintiff by Defendant Edmond, Defendant Chief Davis' failure to exercise his legal duty to report incriminating evidence the proper authorities, a failure that was encouraged by the City of New York and DOC defaming officers who reported on the job incidents to other authorities, and directly and indirectly

discouraging Plaintiff from reporting the assault.

59.     As a proximate and direct result of Defendants' conduct, Plaintiff suffered the injuries and damages described above.

60.     As a result, Plaintiff suffered emotional, physical and compensatory damages.

### THIRD CAUSE OF ACTION
### 42 USC § 1983
### Supervisory Liability

61.     Defendant Davis was, at the relevant times, supervisory personnel at the New York City Department of Corrections with responsibility of oversight for correction Defendant Edmond

62.     Davis was responsible for the training, instruction, supervision, and discipline of Defendant Edmond caused physical injury to Plaintiff and was an accessory after the fact.

63.     Defendant Davis and the City of New York received complaints about the conduct of Defendant Edmond, knew about past complaints, physical altercations and disciplinary infractions, or, in the exercise of due diligence, would have perceived that Defendant Edmond had conduct and disciplinary problems that posed a pervasive and unreasonable risk of harm to the Plaintiff.

64.     Defendants Davis and the City of New York or in the exercise of due diligence would have known, that the conduct of Edmond against Ms. Peterson was likely to occur.

65.     Plaintiff contends that Defendants failed to take preventative and remedial measures to guard against the brutality by Defendant Edmond and that if they had taken appropriate action, Ms. Peterson would not have been injured.

66.     Defendant City of New York through the DOC failed to take any corrective or disciplinary action against Defendant Edmond.

67.     The failure of these individual defendants to supervise and discipline Defendant Edmond accordingly amounted to gross negligence, deliberate indifference, or intentional misconduct which directly caused the deprivations suffered by Ms. Peterson.

## FOURTH CAUSE OF ACTION
### 42 USC § 1983

68.     Prior to August 26, 2010, Defendant City of New York, acting at the behest of and in close conjunction with the DOC has developed and maintained policies and customs exhibiting deliberate indifference to the constitutional rights of its citizens, which caused the violations of Ms. Peterson's rights.

69.     It was the policy and/or custom of the City of New York to perform inadequate and inconsistent investigations and to inadequately punish the complaining officer.

70.     Instead, acts of violence by one officer toward another were tolerated and condoned by the City of New York.

71.     Defendants failed in their responsibilities to investigate misconduct and discipline transgressors.

72.     As a result of the foregoing, Plaintiff has been damaged in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION
### (Fifth and Fourteenth Amendment Violations)

73.     At all times relevant, Defendant Davis and Defendant Warden Davis acted under the color of law.

74.     Defendant Davis and the City of New York deprived Plaintiff of her statutory right to her employment by failing to afford her procedural due process and notice and an opportunity to be heard.

75.     Defendants failed to afford Plaintiff due process because this conflicted with Defendant City of New York and the DOC's policy and practice of dealing with workplace violence between officers efficiently and in a manner that showed the DOC in a favorable light even if this was untrue in practice.

76.    Defendants deprived Ms. Peterson of her property interest in vacation time accumulated by Plaintiff prior to the assault by Defendant Edmond.

77.    Defendant deprived plaintiff of her property interest by suspending her without pay when medical and documentary evidence revealed that plaintiff was physically assaulted.

78.    Defendants' failure to properly deal with employee-to-employee physical disputes was the result of a policy of failing to properly deal with assaults on correction officers by other officers in order to protect the so-called integrity of the agency.

79.    Defendants' institutional bias was evident in the fact that Defendant Davis saw swelling in plaintiff's face immediately after Edmond assaulted Plaintiff.

80.    Defendants' policy of reprimanding officers for physical assaults on other officers was a result of its practice, policy and custom of covering up workplace violence.

81.    Defendants' acts are the direct result of an internal custom or practice that is not written or formally adopted, but that is a pervasive, longstanding practice that has deprived Plaintiff of the right to be safe within the workplace and free from violence.

82.    Defendants intentionally allowed Defendant Edmond to escape punishment for assaulting Ms. Peterson in direct contravention of department policy.

83.    As a result, Defendant has suffered emotional, physical and compensatory damages for which this Court has the authority to award.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests this Court:

A.    Enter judgment in favor of Plaintiff and against Defendants;

B.    Enter an order declaring Defendant Davis and Edmond's conduct unconstitutional;

C.    Award Plaintiff compensatory and punitive damages against Defendants;

D.      Enter a permanent injunction, upon proper motion, requiring Defendant City of New York to adopt appropriate policies related to the hiring and supervision of its correction officers; and

E.      Grant to Plaintiff such other and further relief as may be just and proper under the circumstances, including but not limited to appropriate injunctive relief.

## JURY TRIAL DEMAND

Plaintiff demands a jury trial, pursuant to the Seventh Amendment to the Constitution of the United States, as to all claims for damages.

Dated: Staten Island, New York
      November 1, 2017

By: _____
      Barbara Peterson
      Pro se plaintiff
      610 Victory Boulevard, #2F
      Staten Island, New York 10301
      (646) 515-0478