UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------X

BARBARA PETERSON,

                    Plaintiff,              10 Civ. 7283

        -against-                           OPINION

City of New York; Chief Larry W. Davis;
Asst. Dep. Warden N.A. Valasquez #54;
Captain G. Vaughn #441; Captain Irshand
Weston #1198; C.O. Dixon #1997; C.O. A.
Holley #14764; C.O. L. Emerson-Boykin
#11402; C.O. L. Rue #14596; C.O. Bell
#13702; C.O. Lori Edmonds #1192; COBA
Legal Department (John Doe And Jane Doe);
Workman's Compensation Board; Deputy
Inspector Raymond Caroli NYPD 6th
Precinct; Inspector Gin Yee
NYPD 5th Precinct; Rose Gill Hearn
Commissioner of the Department of
Investigations; Captain William Valerio
DOI (John Doe); Investigator for
Compensation Board Li MF (Jane Doe);
NYC District Attorney's Office
(John Doe); Health and Management
Division (HMD); Doctor Mathur in HMD
Office; Doctor Kwasink in HMD Office;
Dora B. Schirro DOC Trials and
Litigation; City of New York; and
Jerome Davis,

                    Defendants.

------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/6/18

A P P E A R A N C E S:

        Pro Se

        BARBARA PETERSON
        630 Victory Blvd., #2F
        Staten Island, NY 10301

Attorneys for Defendants

ZACHARY W. CARTER
Corporation Counsel of the City of New York
100 Church Street., Room 1-183
New York, NY 10007
By: John Corbin Carter, Esq.

**Sweet, D.J.**

Plaintiff, Barbara Peterson ("Plaintiff" or "Peterson"), a former Correction Officer with the New York City Department of Correction ("DOC"), has alleged violations of 42 U.S.C. §§ 1983, 1985, and 1988, arising out of an April 2010 incident in which she was allegedly assaulted by Lori Edmond, a DOC co-worker, and later disciplined for her involvement in the physical altercation that ensued.

Defendants Rose Gill Hearn, Dora Schriro, Gin Yee, Vincent Valerio, Avra Holley, Lorraine Emerson-Boykin, Mithlesh Mathur, and Herbert Kwasink (collectively, the "Individual Defendants") have moved pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the Amended Complaint. *See* ECF No. 46.

Defendant City of New York ("the City") has likewise moved pursuant to Rule 12(b)(6) to dismiss the Amended Complaint. *See* ECF No. 58.

2

## I. Prior Proceedings

On September 22, 2010, Plaintiff commenced this § 1983 suit for deprivation of her constitutional rights against 23 different defendants: (1) The New York City Department of Corrections; (2) DOC Chief Larry W. David; (3) Assistant Deputy Warden N.A. Valasquez; (4) DOC Captain G. Vaughn; (5) DOC Captain Irshand Weston; (6) DOC Correction Officer Dixon; (7) DOC Correction Officer Holley; (8) DOC Correction Officer Emerson-Boykin; (9) DOC Correction Officer Rue; (10) DOC Correction Officer Bell; (11) DOC Correction Officer Edmonds (a/k/a Edmound); (12) COBA Legal Department (Jane Doe and John Doe); (13) Workman's Compensation Board; (14) Deputy Inspector Raymond Caroli; (15) Inspector Gin Yee; (16) DOI Commissioner Rose Gill Hearn; (17) Captain William Valerio; (18) Investigator for Compensation Board Li Li MF (Jane Doe); (19) NYC District Attorney's Office (John Doe); (20) Health and Management Division (HMD); (21) Doctor Mathur in HMD Office; (22) Doctor Kwasink in HMD Office; and (23) DOC Commissioner Dora B. Schriro. *See* ECF No. 2.

By Order dated March 15, 2011, Plaintiff's action was dismissed without prejudice for failure to prosecute, noting that Plaintiff had failed to serve defendants within 120 days in

3

violation of Fed. R. Civ. P. 4(m). *See* ECF No. 3. Ten days later, on March 25, 2011, this action was reopened and on March 29, 2011 service of a Summons and Complaint upon defendants within 45 days was ordered. *See* ECF Nos. 5-6. By Order dated August 18, 2011, the action was again dismissed for failure to prosecute. *See* ECF No. 7. Five years later, on August 11, 2016, Plaintiff filed a motion to "reopen case on the grounds of extraordinary circumstances." *See* ECF No. 8. On November 16, 2016, Plaintiff's motion to reopen the case was granted. *See* ECF No. 11. After Plaintiff failed to prosecute for a third time, the action was dismissed with prejudice on February 16, 2017. *See* ECF No. 13.

After Plaintiff's March 1, 2017 letter, the case was reopened and, on March 13, 2017, an Order of Service was issued. In the Order of Service, the following actions were taken with respect to certain defendants:

i.    Defendants (1) New York State Workers' Compensation Board; (2) DOC; and (3) Health Management Division were terminated from the action;

ii.   The City of New York was added as a defendant, but was not ordered to be served via Marshals service;

4

iii. Marshals service was ordered on the following defendants: (1) New York City Police ("NYPD") Inspector Raymond Caroli; (2) NYPD Inspector Gin Yee; (3) Former DOI Commissioner Rose Gill Hearn; (4) DOI Captain William (Vincent) Valerio; (5) HMD Doctor Mithlesh Mathur; and (6) HMD Doctor Herbert Kwasink;

iv. DOC was requested to waive service for Defendants (1) David, (2) Velasquez, (3) Vaughn, (4) Weston, (5) Dixon, (6) Holley, (7) Emerson-Boykin, (8) Rue, (9) Bell, (10) Edmonds (a/k/a Edmound); and (11) Commissioner Schriro; and

v. The Plaintiff did not provide enough identifying information to include (1) "NYC District Attorney's Office (John Doe)," (2) COBA Legal Department (John Doe and Jane Doe)," or (3) "Investigator for Compensation Board Li MF (Jane Doe)" as defendants in this action.

After being granted leave to file an amended complaint by the Court, Plaintiff filed her Amended Complaint on November 1, 2017. *See* ECF No. 43. Following a letter request by Plaintiff, the Court requested that the City waive service of summons in this action, which it did on March 7, 2018. *See* ECF No. 53-56.

The Individual Defendants' motion to dismiss was filed
on December 11, 2017, *see* ECF No. 46, and was marked fully
submitted on February 7, 2018. The City's motion to dismiss was
filed on April 4, 2018, *see* ECF No. 58, and was marked fully
submitted on May 29, 2018.

## II.  **The Facts**

The Amended Complaint sets forth the following facts,
which are assumed true for the purpose of these motions to
dismiss. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2
Cir. 2012).

Plaintiff, a former Correction Officer with the DOC,
alleges that she was assaulted by a fellow Correction Officer,
Lori Edmond, on April 26, 2010 while at work. *See* Am. Compl. ¶
2, ECF No. 43. On that date, Plaintiff and Edmond were involved
in a verbal disagreement that escalated into a physical
altercation. *Id.* ¶¶ 22-25. The Supervising warden of Plaintiff's
division, Jerome Davis ("Warden Davis"), wrote incident reports
after the incident, stating that Edmond struck Plaintiff "three

6

times to the left side of the face" and that Plaintiff also physically assaulted Edmond. *See id.* ¶¶ 33-34. Warden Davis recommended that Plaintiff be suspended for five days for her role in the incident. *See id.* ¶ 29.

Plaintiff contends that the City failed to address the alleged assault and "turn[ed] a blind eye and suspend[ed] both parties to avoid dealing with the physical assault on Plaintiff;" that DOC "failed to address the assault despite Plaintiff's repeated requests, suspended Plaintiff for ten days and transferred Plaintiff to a less desirable work location after the incident in retaliation for reporting this incident and trying to file criminal charges against Edmond;" and that DOC's "failure" constitutes a "longstanding widespread deliberately indifferent custom, habit, practice, and/or policy . . . to permit corrections officers to use excessive force against other officers when such use is unnecessary and unjustified." *Id.* ¶¶ 41-42, 48.

## III. The Applicable Standard

To "survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v.*

7

*Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Unless a plaintiff's well-pleaded allegations have "nudged [her] claims across the line from conceivable to plausible, [the plaintiff's] complaint must be dismissed." *Twombly*, 550 U.S. at 570; *see also Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief,'" and must, therefore, be dismissed.") (citations omitted).

Moreover, the Court must only accept as true the allegations that contain factual matter, and need not accept as true the allegations that merely state legal conclusions. *See Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009). Following *Iqbal*, courts have granted motions to dismiss where the plaintiff has pled her claim in a conclusory form, without sufficient supporting factual allegations. *See, e.g.*, *Patane v. Clark*, 508 F.3d 106, 112 (2d Cir. 2007); *Thompson v. ABVI Goodwill Servs.*, 531 F. App'x 160, 162 (2d Cir. 2013). While a complaint by a pro se plaintiff is construed liberally, the complaint still must conform to the pleading requirements of the Federal Rules and is subject to dismissal if the plaintiff fails to allege sufficient facts from which this Court could

8

reasonably interpret a plausible claim. *See Caidor v. Onondaga Cty.*, 517 F.3d 601, 605 (2d Cir. 2008); *Jackson v. N.Y. State Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010) (noting that a pro se complaint must state a plausible claim for relief "sufficient to raise a 'right to relief above the speculative level'" (quoting *Twombly*, 550 U.S. at 555)).

## IV. The Individual Defendants' Motion to Dismiss the Amended Complaint is Granted

### a. § 1983 Claim

"In order to establish individual liability under § 1983, a plaintiff must show (a) that the defendant is a person acting under color of state law, and (b) that the defendant caused the plaintiff to be deprived of a federal right." *Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 123 (2d Cir. 2004) (internal citation and quotation marks omitted). An individual "cannot be held liable for damages under § 1983 'merely because he held a high position of authority,'" though he may be held liable if "was personally involved in the alleged deprivation." *Id.* at 127 (quoting *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996)). Personal involvement can by shown by evidence that the defendant participated directly in the alleged

9

constitutional violation; failed to remedy the wrong after being informed of the violation through a report or appeal; created a policy or custom under which the unconstitutional practices occurred, or allowed the continuance of such a policy or custom; was grossly negligent in supervising subordinates who committed the wrongful acts; or exhibited deliberate indifference by failing to act on information indicating that unconstitutional acts were taking place. *See id.* (citing *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)).

The Amended Complaint alleges that Plaintiff's due process rights were violated when Edmond assaulted her, and when Plaintiff was allegedly suspended from work after reporting the assault. Even assuming that Plaintiff has alleged a plausible due process violation, the § 1983 allegations as to the Individual Defendants are insufficient to survive a motion to dismiss.

As to Defendants Gill Hearn, Schriro, Yee, Mathur, Kwasink, and Valerio, the Amended Complaint offers no facts to suggest that they participated directly in the alleged assault, had any knowledge that the incident occurred, or created or continued a policy or custom allowing for such conduct.

With respect to Defendants Holley and Emerson-Boykin,
Plaintiff merely alleges that both were Corrections Officers
employed by the City when the altercation at issue occurred, and
that they "heard the nearby altercation." Am. Compl. ¶¶ 11-12,
26-27. Plaintiff also alleges that she spoke to Defendant
Emerson-Boykin around the time of the altercation. *Id.* ¶ 26.
These allegations do not rise to the level of personal
involvement required to establish individual liability under §
1983, as described above.

For these reasons, the § 1983 claims against the
Individual Defendants are dismissed.

### b. § 1985 Claims

Section 1985 prohibits two or more persons from
conspiring for the purpose of depriving any person of the equal
protection of the laws or of equal privileges and immunities
under the laws. *See* 42 U.S.C. § 1985. To adequately plead a
claim under § 1985, a plaintiff must allege (1) a conspiracy (2)
for the purpose of depriving a person or class of persons of the
equal protection of the laws, or the equal privileges or
immunities under the laws; (3) an overt act in furtherance of
the conspiracy; and (4) an injury to the plaintiff's person or

property, or a deprivation of a right or privilege of a citizen of the United States. *See Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir. 1999). A conspiracy "need not be shown by proof of an explicit agreement but can be established by showing that the parties have a tacit understanding to carry out the prohibited conduct." *Id.* (internal citation omitted). Furthermore, Section 1985(3) requires that the conspiracy is motivated by "some racial or perhaps otherwise class-based, invidious discriminatory animus." *Mira v. Kingston*, 715 Fed. App'x 28, 30 (2d Cir. 2017) (citing *Mian v. Donaldson, Lufkin & Jenrette Secs. Corp.*, 7 F.3d 1085, 1088 (2d Cir. 1993)). A plaintiff must also demonstrate "with at least some degree of particularity, overt acts which the defendants engaged in which were reasonably related to the promotion of the claimed conspiracy." *Roach*, 165 F.3d at 147.

Peterson claims that the "Defendants conspired with each other for the purpose[] of preventing the authorities from enforcing Plaintiff's right to equal protection of the laws" and that Defendants "engaged in a cover up in furtherance of the conspiracy to conceal the crimes and misconduct of Defendants Chief Davis, Warden Davis, and Edmond." Am. Compl. ¶¶ 56-57. Plaintiff further alleges that "false statements [were] made to the New York State Worker's Compensation Board about the attack

on Plaintiff by Defendant Edmond;" that Defendant Chief Davis
"fail[ed] to exercise his legal duty to report incriminating
evidence [to] the proper authorities, a failure that was
encouraged by [the City] and DOC;" that Defendants "defam[ed]
officers who reported on the job incidents to other
authorities;" and that Defendants "directly and indirectly
discourage[ed] Plaintiff from reporting the assault." *Id.* ¶ 58.
As stated above, Defendants Holley and Emerson-Boykin are also
mentioned in the Amended Complaint as being nearby at the time
of the incident. *Id.* ¶¶ 26-27.

        These allegations fail to plausibly show that the
Individual Defendants entered into a conspiracy against
Peterson. *See Gallop v. Cheney*, 642 F.3d 364, 368 (2d Cir. 2011)
(noting that "claims of conspiracy containing only conclusory,
vague, or general allegations of conspiracy to deprive a person
of constitutional rights cannot withstand a motion to dismiss").
Plaintiff alleges no specific facts to support the existence an
agreement among any of the Individual Defendants to carry out
the scheme, or of any particular overt act undertaken by one of
the Individual Defendants. The mere fact that the Individual
Defendants were employed by the DOC, DOI, or NYPD at the
relevant time, or that some of the Individual Defendants were
nearby at the time of the incident, is insufficient to give rise

to any inference that they agreed to violate Peterson's
constitutional rights.

Moreover, even assuming Peterson has adequately
alleged a conspiracy, she has cited no facts suggesting that the
Individual Defendants acted with class-based, invidious
discriminatory animus. *Cf. Thomsen v. City of N.Y.*, 2016 WL
590235 at *11 (S.D.N.Y. Feb. 11, 2016) (dismissing § 1985 in
part because plaintiff did not "allege[] any specific facts
indicating that the defendants [took action against him] because
of a protected characteristic").

Accordingly, the § 1985 claims against the Individual
Defendants are dismissed.

## V. The City's Motion to Dismiss the Amended Complaint is Granted

Plaintiff has failed to sufficiently plead that the
City's alleged constitutional violations were the result of an
official policy or custom. *See Monell v. Dep't of Soc. Servs.*,
436 U.S. 658, 694 (1978); *Owen v. Haas*, 601 F.2d 1242 (2d Cir.),
*cert. denied*, 444 U.S. 980 (1979). To hold the City liable under
§ 1983, Plaintiff bears the burden of establishing that the

14

entity itself deprived her of a constitutional right through a
municipal "policy," "practice," or "custom." *See Monell*, 436
U.S. at 690-95; *Jeffes v. Barnes*, 208 F.3d 49, 57-58 (2d Cir.
2000) ("Where a plaintiff relies . . . on the theory that the
conduct of a given official represents official policy, it is
incumbent on plaintiff to establish that element as a matter of
law."). A mere assertion that a municipality has such a policy
is insufficient to establish *Monell* liability. *See Bd. of
Comm'rs v. Brown*, 520 U.S. 397, 403 (1997) ("We have
consistently refused to hold municipalities liable under a
theory of respondeat superior.") (internal citations omitted);
*Harper v. City of New York*, 424 F. App'x 36, 38 (2d Cir. 2011);
*Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993)("The
mere assertion . . . that a municipality has such a custom or
policy is insufficient in the absence of allegations of fact
tending to support, at least circumstantially, such an
inference."). As the Supreme Court has made clear in respect to
municipal liability,

> [I]t is not enough for a § 1983 plaintiff merely
> to identify conduct properly attributable to the
> municipality. . . . The plaintiff must also
> demonstrate that, through its deliberate conduct,
> the municipality was the 'moving force' behind
> the injury alleged. That is, a plaintiff must
> show that the municipal action was taken with the
> requisite degree of culpability and must
> demonstrate a direct causal link between the

15

municipal action and the deprivation of federal
rights.

*Brown*, 520 U.S. at 404; see also *Fierro v. City of New York*, 994
F. Supp. 2d 581, 588-89 (S.D.N.Y. 2014).

Proof of a single incident of unconstitutional
activity is insufficient to demonstrate the existence of a
custom or policy. *See City of Oklahoma v. Tuttle*, 471 U.S. 808,
821 (1985); *Turpin v. Mailet*, 619 F.2d 196, 202 (2d Cir. 1980),
*cert. denied*, 449 U.S. 1016 (1980) (noting that absent strong
evidence of supervisory indifference, such as acquiescence in a
prior pattern of conduct, policy could not ordinarily be
inferred from a single case of illegality). More specifically,
an official's single decision to alter an employee's position
does not somehow create a municipal policy or custom. "The
decision to fire one man, for whatever reason, is neither a
course or method of action to help guide and determine present
and future decisions nor a high-level overall plan." *Collins v.
Stasiuk*, 56 F. Supp. 2d 344, 346 (S.D.N.Y. 1999).

Finding that an employment decision in regard to one
person is a "personnel decision and nothing more," this Court
has noted that "[i]t is hard to imagine any decision that falls
farther outside the common understanding of the word 'policy.'"

16

*Id.* at 345 (citing *Soto v. Schembri*, 960 F. Supp. 751, 759 (S.D.N.Y. 1997). In addition, a decision taken with respect to a single employee is not "so 'persistent and widespread'" as to justify the imposition of municipal liability." *Giaccio v. City of New York*, 308 F. App'x 470, 472 (2d Cir. 2009) (quoting *Green v. City of New York*, 465 F.3d 65, 80 (2d Cir. 2006)).

Furthermore, it is Plaintiff's burden to establish that the municipal official whose conduct is in question represents an official policymaker involved with and responsible for promulgating municipal policy. *See Jeffes*, 208 F.3d at 57-58. The decision-maker alleged to have violated a plaintiff's constitutional rights must have final policymaking authority for the municipality. *See Pembaur v. Cincinnati*, 475 U.S. 469, 481 (1986); *see also Soto*, 960 F. Supp. at 759 ("The power to make employment decisions alone does not in itself give rise to potential Section 1983 liability.").

Here, nothing alleged plausibly supports a claim that there was a particular policy, practice, or custom of the City or DOC to incite or condone physical altercations among employees; to fail to properly investigate assault complaints; to permit collusive statements by officers involved in altercations; or to fail to supervise and train corrections

officers on the use of force. *See* Am. Compl. ¶¶ 46-49, 68-69,
78-81. Although Plaintiff uses the terms "policy," "custom," and
"practice" throughout the Amended Complaint, Plaintiff's
conclusory statements are not supported by factual evidence
setting forth any recurring pattern that might form such a
policy. See generally Am. Compl. The Amended Complaint does not
adequately identify a single other incident in which the City or
DOC failed to investigate assault allegations, condoned
workplace altercations, or failed to correctly supervise
corrections officers from using excessive force while on the
job. See generally id. Accordingly, as Plaintiff has not pointed
to any events outside the context of her 2010 assault
allegations, she has not adequately alleged the existence of a
municipal policy or practice that was the "moving force [behind]
the constitutional violation." *Monell*, 436 U.S. at 694; *see also*
*Fierro*, 994 F. Supp. 2d at 588-89. Plaintiff has not
sufficiently stated that any of the alleged actions were
plausibly "so persistent or widespread" as to justify the City's
liability here. *See, e.g.*, *Giaccio*, 308 F. App'x at 472
(internal citations omitted); *Green*, 465 F.3d at 80 (holding
that, even where the plaintiff identified four other instances
in which defendants may have acted impermissibly, citing four
other instances falls far short of establishing a "persistent or

18

widespread" practice which could justify the imposition of
municipal liability).

The Amended Complaint has failed to allege a plausible
constitutional violation that could support a § 1983 claim.
Absent any underlying constitutional violation, there can be no
municipal liability. *See City of Los Angeles v. Heller*, 475 U.S.
796, 799 (1986); *Fotopolous v. Bd. of Fire Comm'rs of Hicksville
Fire Dist.*, 11 F. Supp. 3d 348, 373 (E.D.N.Y. 2014) ("The
dismissal of Plaintiff's underlying claim for First Amendment
retaliation requires dismissal of Plaintiff's municipal
liability claim, as Defendants cannot be liable where there is
no underlying constitutional violation.").

Plaintiff's Opposition fails to establish that the
alleged constitutional violations were the result of a
particular policy, practice, or custom of the City or DOC.
Plaintiff contends that "in furtherance of [the] unwritten
policy, Defendants ignored their written operations order on
Staff Workplace Violence," and that a "code of silence"
permeated DOC's relations with its employees regarding workplace
violence complaints. *See* Pl. Opp. at 4-5. Plaintiff's conclusory
allegation is that, by negligently ignoring its own directives,
the City created a policy by which Plaintiff was aggrieved. See

id. These allegations do not rise to the level of deliberate culpability required to maintain a *Monell* claim for municipal liability. *See Brown*, 520 U.S. at 403-07; *Fierro*, 994 F. Supp. 2d at 588-89.

Moreover, Plaintiff has not sufficiently alleged that any of the alleged actions were plausibly "so persistent or widespread" as to justify the City's liability here. *See Giaccio*, 308 F. App'x at 472 (internal citations omitted). Plaintiff's Opposition alleges a few other instances of misconduct, which she believes constitute a pervasive "policy" or "custom." First, Plaintiff points to a complaint in an unspecified court involving the City of New York, in which the plaintiff allegedly was forced to rewrite her narrative of an incident. *See* Pl. Opp. at 5. Plaintiff offers, without specific facts, that "[t]here were several officer-to-officer combats that occurred during [her] tenure as a corrections officer that were not adequately dealt with as a result of the code of silence . . . ." *Id.* at 12. These allegations are not supported by any factually based support, such as the names of the officers involved, the dates of the alleged conduct, or any other sufficiently identifying factors. A few factually-untethered instances do not sufficiently state a policy upon which liability could attach to the City. *See Turpin*, 619 F.2d

at 202 (absent more evidence of supervisory indifference, such as acquiescence in a prior pattern of conduct, policy could not ordinarily be inferred from single incident of illegality); *Green*, 465 F.3d at 80 (quoting *Patterson v. Cnty. of Oneida*, 375 F.3d 226 (2d Cir. 2004)(noting that where a plaintiff identified only four examples of misconduct, the allegations stopped far short of establishing a practice that is "so persistent and widespread" as to justify the imposition of municipal liability.)). Furthermore, Plaintiff's allegations under § 1985 must also be dismissed for the same reasons as those listed above. *See Owen v. Haas*, 601 F.2d 1242 (2d Cir. 1978), *cert. denied*, 444 U.S. 980 (1978) (holding that to state a claim under § 1985, the plaintiff must meet the *Monell* liability requirements of § 1983).

Plaintiff's attempt to add claims under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e et seq. for the first time in her Opposition is improper and will be disregarded. Plaintiff's Amended Complaint set forth specifically enumerated claims involving 42 U.S.C. §§ 1983 and 1985(3), but never mentions any cause of action under Title VII. *See* Am. Compl. No allegations establish what suspect class Plaintiff claims to be a part of in order to bring a hostile work environment claim. Plaintiff does not plead that she has exhausted any

21

administrative remedies with the United States Equal Employment

Opportunity Commission, which is a condition precedent to

bringing suit under Title VII. *See, e.g.*, *Federal Express v.*

*Holowecki*, 552 U.S. 389, 400-02 (2008); *McInerney v. Rensselaer*

*Polytechnic Inst.*, 505 F.3d 135, 138 (2d Cir. 2007).


**VI. Conclusion**


Under the authorities and conclusions set forth above,

the motions of the Individual Defendants and the City to dismiss

the Amended Complaint are granted with prejudice.


It is so ordered.


**New York, NY**
**November     , 2018**

**ROBERT W. SWEET**
**U.S.D.J.**

22